408/07/GMV
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
CRESCENT AFRICA (GHANA) LTD.
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Gina M. Venezia

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



------------------------------------------------

CRESCENT AFRICA (GHANA) LTD.,

        Plaintiff,

- against -

ECOBANK NIGERIA PLC.,

        Defendant.

------------------------------------------------

12 Civ. _____ (____)

VERIFIED COMPLAINT

Plaintiff Crescent Africa (Ghana) Ltd. ("Crescent Africa" or "Plaintiff"), by and through its attorneys, Freehill Hogan & Mahar, LLP, for its Verified Complaint against Ecobank Nigeria PLC ("Ecobank"), alleges as follows:

1. This is a case of admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333 and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for the recognition and enforcement of foreign maritime judgments, the underlying basis of which was a claim for breach of a maritime contract of carriage, and a claim for damages arising out of the wrongful detention and use of Plaintiff's vessel. The Court also has supplemental and/or ancillary jurisdiction of any and all non-maritime claims, if any.

392945.1

## THE PARTIES

2. At all times material hereto, Plaintiff Crescent Africa was and still is a foreign business entity duly organized and existing under the laws of The Republic of Ghana and is and was engaged in the business of chartering vessels to others to transport petroleum products between ports on the coast of West Africa.

3. At all times material hereto, Defendant Ecobank was and still is a foreign business entity organized and existing under the laws of Nigeria with an office and principal place of business located at Plot 21, Ahmadu Bello Ray, P.O. Box 72688, Victoria Island, Lagos, Nigeria, and was and still is in the business of banking and finance throughout Africa and internationally.

## BACKGROUND FACTS TO THE LITIGATION

4. Plaintiff Crescent Africa was, at all relevant times, the disponent owner of the M/T ANNA.

5. In or about June 2006, Plaintiff entered into a two-year time charter agreement with the Tema Oil Refinery Limited (TOR) (the Ghana State refinery) to transport consignments of oil between the ports of Tema and Takoradi and chartered the M/T ANNA to perform that contract.

6. In or about October 2006, due to some downtime in the use of the M/T ANNA, TOR agreed that Plaintiff could sub-charter the vessel for a discrete period of time on a spot voyage basis.

7. Accordingly, on or about November 3, 2006, Plaintiff sub-chartered the vessel to perform a spot voyage of a mere 6.5 days to load a cargo of premium motor spirit ("PMS") (*i.e.* gasoline) from the M/T OCEAN SUCCESS, moored offshore the Nigerian coast, for delivery into a safe berth at Ibafon, Lagos, Nigeria, between November 7-13, 2006.

8. Bronwen Energy Trading ("Bronwen") was the shipper and co-owner of the cargo of PMS that was to be loaded onboard the M/T ANNA (approximately 5,442 metric tons), and Defendant Ecobank was the consignee and co-owner of the said cargo.

9. Contrary to the terms of the spot voyage charter, the M/T ANNA was delayed from November 7, 2006, to November 22, 2006, when it was finally loaded with the cargo of 5,442 metric tons of PMS.

10. A bill of lading was then duly issued identifying Bronwen as the shipper and Defendant Ecobank as the consignee.

11. The bill of lading incorporated the spot voyage charter, and therefore, the bill of lading, in conjunction with the charter party, constituted the contract of carriage for the subject voyage, to which both the shipper and consignee were bound.

12. After having been loaded, the vessel remained in the same position without any prospect of berthing at Ibafun, Lagos, because, contrary to their obligations, Bronwen and Defendant Ecobank, as co-owners of the said cargo, failed to arrange a suitable berth and take delivery of the cargo or make payment of freight monies for demurrage which had substantially accrued, all in violation of their obligations under the spot voyage charter and ocean bill of lading.

13. On or about December 5, 2006, TOR's earlier consent, given in accordance with the provisions of the two-year time charter, expired, and TOR rightfully demanded the return and use of the M/T ANNA in Ghanaian waters to resume its performance under the time charter party.

14. Having given the cargo owners all the required notices to remove their cargo from Plaintiff's vessel, and cargo owners' continued failure to make any arrangements to offload their

cargo, Plaintiff exercised ultimate prudence and, in accordance with the law, reordered the vessel to return to Ghanaian waters.

15. The vessel arrived in Ghanaian waters on or about December 10, 2006, still loaded with the 5,442 metric tons of PMS.

16. Plaintiff made immediate arrangements to discharge and warehouse the cargo in Ghana, thereby freeing the vessel to undertake its normal duties at TOR, and filed an application before the High Court, Commercial Division, in Accra, Ghana, seeking an order authorizing the discharge and storage of the said cargo.

17. On December 19, 2006, Plaintiff's application was granted by Justice Kwofie, but unbeknownst to Plaintiff, Bronwen (the shipper of the subject cargo) had filed an ex parte application on December 19, 2006, in the Accra High Court, Commercial Division, seeking an immediate injunction against any discharge of the cargo in Ghana and the return of the vessel to Nigeria for discharge there in accordance with the bill of lading.

18. Bronwen's application for an interlocutory injunction was granted on December 21, 2006, by Justice Torkornoo of the Accra High Court, Commercial Division, which injunction was to remain in effect until January 15, 2007. (Ex. 1).

19. Despite being advised that if Justice Torkornoo had been informed of the earlier order granted by Justice Kwofie, she would not have granted the Order of Interlocutory Injunction, Plaintiff, as a prudent commercial measure and out of respect to the Ghanaian Court, complied with the December 21 injunction order and kept the cargo onboard.

20. On January 16, 2007, Bronwen, together with Ecobank, filed an application in the Accra High Court seeking a continuance of the interlocutory injunction preventing the discharge of the said cargo except in Nigeria in accordance with the bill of lading.

21.     Bronwen's application for an extension of the injunction was heard before Justice Torkornoo in the Accra High Court on January 22, 2007.

22.     Justice Torkornoo recognized that any order compelling Plaintiff Crescent Africa "to discharge the cargo in Nigeria must be balanced by an order protecting firstly [Crescent Africa's] interest in the demurrage caused by the earlier order of 21st December 2006 and undetermined difficulties in discharging the cargo into [Bronwen's] custody since 13th November 2006, secondly losses that [Crescent Africa] were incurring as a result of being restrained from making the vessel available for work in Ghana, and expenses incurred as result of obeying the court's order to discharge the cargo in Nigeria." (*See* Exs. 2 & 5).[1]

23.     Accordingly, on January 24, 2007, Justice Torkornoo of the Accra High Court issued an order directing that the cargo be discharged in Nigeria, but conditioning such discharge on (1) Bronwen paying accrued vessel demurrage from November 13, 2006, until the date of discharge at the rate of $7,500; (2) Bronwen provide Crescent Africa a letter of indemnity against any claims by other entities asserting ownership of the cargo; and (3) Bronwen provide a bank guarantee issued by Defendant Ecobank (the co-owners of the cargo) in the sum of $1 million to cover, *inter alia*, any charges, unpaid freight and other expenses. (Ex. 2).

24.     In compliance with the Accra Court's January 24, 2007, order, Crescent Africa directed the vessel to sail to Nigeria to discharge the cargo as ordered by the court. In violation of the Ghanaian court's orders, Bronwen, together with Ecobank, caused the arrest of the M/T ANNA while it was moored outside Nigerian territorial waters awaiting both Ecobank and Bronwen to fulfill their obligations under the contract of carriage and the January 24, 2007, order of the Accra High Court. Bronwen, together with Ecobank, attempted to force the discharge of

---

[1] In the Ghanaian proceedings, Bronwen was the plaintiff and Crescent Africa and the vessel were the defendants. Thus, references to the first "defendant" in the Ghanaian pleadings are to Crescent Africa.

392945.1                                                  5

the cargo without any of the provisions of the Accra Court's January 24, 2007, order being complied with. That arrest was subsequently found to have been wrongful.

25. In further disregard of the Accra Court's January 24 order, Bronwen attempted to discontinue its action filed in Accra without leave of court and without having complied with the court's prior orders.

26. Plaintiff Crescent Africa applied to set aside the discontinuance attempt on account of there being a counterclaim against Bronwen for damages and existing orders yet to be complied with.

27. On or about March 20, 2007, Justice Torkornoo held that Bronwen's discontinuance was wrongful and reinstated the case with reference to the prior January 24, 2007, order which had directed Bronwen to pay demurrage and undertake other obligations with respect to the carriage and delivery of the cargo onboard the M/T ANNA. (Ex. 3).

28. On March 30, 2007, Plaintiff Crescent Africa wrote to Defendant Ecobank, demanding that it pay the costs in respect of the carriage and costs associated with retention of the cargo onboard. (Ex. 4).

29. On or about April 2, 2007, Justice Torkornoo awarded Crescent Africa ₵20,000,000.00 (Ghanain Cedi) (equivalent of $2,200) and $330,000 (U.S. Dollars) in connection with the further delays suffered to the M/T ANNA, including costs associated with the wrongful arrest of the vessel in Nigeria and compensation for sundry expenses incurred in keeping the cargo onboard the vessel and carrying it to Nigeria, and demurrage at the rate of $7,500 per day from December 21, 2006, to April 2, 2007 (a total of $765,000). In total, the Accra High Court awarded Plaintiff $1,097,200. (Ex. 5).

30. Plaintiff Crescent Africa served a copy of the April 2, 2007, ruling on Defendant Ecobank, as co-owners and consignees of the cargo and hence responsible for the amounts awarded, and placed it on notice that Plaintiff would vigorously enforce the order in the absence of prompt settlement of the amounts owed. (Ex. 6).

31. Plaintiff Crescent Africa again wrote to Defendant Ecobank on May 4, 2007, requesting payment of the amounts owed. (Ex. 7).

32. Plaintiff's demands of Defendant Ecobank went unfulfilled, and Defendant Ecobank did not satisfy its obligations, as co-owners and consignees of the cargo, to pay the amounts owed.

33. Consequently, on May 21, 2007, Plaintiff Crescent Africa instituted proceedings against Defendant Ecobank in Accra seeking damages arising out of its wrongful use and detention of the M/T ANNA and its failure to comply with its obligations under the contract of carriage. (*See* Ex. 8). (These proceedings were eventually dismissed without prejudice and the claims against Ecobank were pursued as a counterclaim in the Accra proceedings originally instituted by Bronwen.)

34. On May 23, 2007, Plaintiff Crescent Africa notified Defendant Ecobank that proceedings had been instituted against it. (Ex. 9).

35. Meanwhile, Bronwen had appealed the April 2, 2007, order, and on May 24, 2007, the Accra Court ordered that a stay of execution was conditioned on Bronwen paying into the Accra Court the costs already awarded to be held in an interest bearing account and further awarded Plaintiff an additional ₵10,000,000.00 (Ghanain Cedi) (equivalent to U.S. $1,100). Bronwen never complied. (Ex. 10).

36. Then, in accordance with Ghana procedure, Plaintiff Crescent Africa applied to join Defendant Ecobank as a party against whom Plaintiff could execute the April 2, 2007, order.

37. On July 31, 2007, Plaintiff Crescent Africa's application was granted, and as a consequence, Ecobank became liable for execution of the April 2, 2007, order related to costs, compensation and demurrage (which had totaled $1,097,200), as a result of the unreasonable delays suffered by the M/T ANNA. (Ex. 11).

38. Ecobank then appeared in the Accra proceedings and applied to set aside all proceedings and processes filed against it, which application was struck as withdrawn on December 13, 2007, and an order made to serve all orders commencing on April 2, 2007, on Ecobank. (Ex. 12).

39. In the meanwhile, Plaintiff sought to execute the July 31, 2007, order by garnishing an account held with Ecobank Ghana, and on January 8, 2008, Defendant Ecobank applied for stay of execution against the said account. The Court by order of February 15, 2008 (Ex. 13), discharged the attachment but left intact the July 31, 2007, order against Ecobank.

40. On February 27, 2008 (Ex. 14), the Accra Court ruled that Ecobank was not liable for execution of the court's January 24, 2007, which pertained to the conditions under which the interlocutory injunction would remain in effect; but Ecobank nevertheless remained liable for the orders issued on April 2, 2007, and July 31, 2007.

41. On April 24, 2008, Defendant Ecobank was joined as a defendant to Plaintiff's counterclaim against Bronwen, in which Plaintiff sought damages against Bronwen and Ecobank (the co-owners of the subject cargo) arising out of their wrongful use and detention of the M/T

ANNA including, without limitation, demurrage costs up to May 31, 2007,[2] insurance premiums for the vessel from December 21, 2006, to May 31, 2007, loss of revenue from the time charter party with TOR, extra expenses including bunkers up to the release of the M/T ANNA from the unlawful arrest, and legal costs. (*See, e.g.*, Ex. 15).

42.  Plaintiff Crescent Africa was granted leave to serve its counterclaim on Defendant Ecobank outside the jurisdiction.

43.  On August 1, 2011, the Accra Court issued a Judgment against Defendant Ecobank and in favor of Plaintiff Crescent Africa awarding money damages[3] as follows:

> **IT IS ADJUDGED** that the 1st Defendant [*i.e.* Plaintiff Crescent Africa] recovers against the Plaintiff [*i.e.* Bronwen] and Ecobank Nigeria PLC, the sum of GH ₵2,000 and statutory interest at 29% per annum in the total sum of GH ₵6,341.53 [equivalent to $4,194.29] and $1,095,000 and statutory interest at 14% per annum in the total sum of $2,000,446.65 and the sum of GH ₵1,000 and statutory interest at 29% per annum in the sum of GH ₵2,457.96 [equivalent to $1,625.69] [a combined total of US $2,006,266.63.]
>
> **IT IS FURTHER ORDERED** that 1st Defendant will be entitled to interest on the above said sums at the rates of 14% per annum on sums calculated in US Dollars, and at the rate of 29% per annum for Cedi amounts, calculated at the close of each day and payable until date of final payment.

(Ex. 16).

44.  Said Judgment was entered on August 1, 2011. (Ex. 17). [A certified copy of the Accra Court's August 1, 2011, Judgment is found at Ex. 19.]

---

[2] The demurrage incurred up to April 2, 2007, had already been awarded in the Accra Court's April 2, 2007, order, but was included as an item of damage in the counterclaim because it remained unpaid.

[3] In its August 1, 2011, Judgment, the Accra High Court recited the history of, inter alia, the April 2, 2007, order and the amounts awarded therein. The Ghana Cedi had undergone a currency adjustment, and thus the equivalent of the ₵20,000,000.00 awarded on April 2 was now ₵2,000. (Compare Exs. 5 & 16).

45. Ecobank tried yet again to be relieved of its obligations to satisfy the judgment and orders of the Accra Court, by arguing that the orders against it had been set aside, but that effort was denied on February 7, 2012. (Ex. 18).

46. On August 31, 2012, the Accra High Court re-issued its August 1, 2011, judgment in its final format. (Ex. 19).

47. On May 2, 2012, Plaintiff Crescent Africa amended its counterclaim against Ecobank seeking damages arising out of the wrongful use and detention of the M/T ANNA and the abuse of process in connection with the various arrest and other proceedings. (Ex. 20).

48. Plaintiff Crescent Africa's counterclaim against Ecobank remains pending in the Accra Court. Plaintiff has substantially concluded its evidence in chief and may call an additional witness at a hearing in November 2012. Once Plaintiff has concluded its evidence, Defendant Ecobank will present its defense.

### FACTS RELEVANT TO THE RULE B APPLICATIONS

49. After investigation, and as set forth in the accompanying Affidavit of Gina M. Venezia, Defendant Ecobank cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims.

50. However, based on the investigations conducted by Plaintiff, as described in the accompanying Declarations of Gina M. Venezia and Kojo Owusu-Nyantekyi, Defendant Ecobank has or will shortly have, assets within this District comprising, *inter alia*, cash, funds, credits, debts, bank accounts, correspondent accounts, and/or letters of credit, of, belonging to, due or for the benefit of Defendant Ecobank (collectively hereinafter, "Assets"), including but not limited to Assets in its name and/or being held for its benefit, at Citibank N.A., Commerzbank AG, Deutsche Bank Trust Company Americas, Deutsche Bank Trust Company, N.A., Deutsche Bank

Aktiengesellschaft, and Standard Chartered Bank, or at such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein.

### FIRST CAUSE OF ACTION: RECOGNITION AND ENFORCEMENT OF AUGUST 1, 2011, AND AUGUST 31, 2012, JUDGMENTS OF THE ACCRA COURT

51. Plaintiff repeats paragraphs 1 - 50 above as set forth herein in their entirety.

52. Pursuant to the doctrine of comity, the judgments, decrees, orders and acts of a foreign court are recognizable and enforceable in the United States.

53. Specifically, under the doctrine of comity, the judgments, decrees or orders of a foreign court are subject to confirmation, recognition and enforcement here as a judgment of a U.S. Court, provided the proceedings in the foreign court were orderly and fair and comported with traditional notions of due process, and the foreign court was a court of competent jurisdiction.

54. The August 1, 2011, and August 31, 2012, Judgments on which comity is sought are enforceable here as an order of this Court, because they were issued by a court of competent jurisdiction in an orderly and fair proceeding, which comported with traditional notions of due process and were issued by a court of competent jurisdiction inasmuch as Defendant Ecobank appeared in those proceedings and had multiple opportunities to contest the relief granted and the Judgments against it.

55. Accordingly, Plaintiff Crescent Africa seeks an order recognizing the August 1, 2011, and August 31, 2012, Judgments of the Accra Court as a judgment of this Court and allowing Crescent Africa to execute upon same in accordance with all applicable procedures.

56. As of November 20, 2012, the amount owed to Plaintiff under the August 1, 2011, and August 31, 2012, Judgments is **$2,408,970.24** ($2,006,266.63 awarded + interest awarded at 14%, compounded daily, of $402,703.61).

57.     Pursuant to Supplemental Admiralty Rule B, Plaintiff Crescent seeks an order of attachment now (*i.e.* prior to judgment issued by this Court) to obtain security for the sums which are recoverable against Defendant Ecobank.

58.     As near as presently may be computed, the total for which Plaintiff seeks an attachment in regards to this First Cause of Action is:

| | |
|---|---|
| Amount awarded in Judgments | $2,006,266.63 |
| Interest up to November 20, 2012, calculated in accordance with Judgments | $402,703.61 |
| Interest for an additional 6 months, the anticipated time for a ruling on Plaintiff's application | $159,000 |
| Total: | $2,567,970.24 |

### SECOND CAUSE OF ACTION: SECURITY FOR COUNTERCLAIM

59.     Plaintiff repeats paragraphs 1 - 50 above as set forth herein in their entirety.

60.     This action is further brought to obtain security in aid of the Accra proceedings and in respect to Plaintiff's claims against Ecobank as outlined above in regards to the amounts due and owing as a result of Defendant's wrongful use and detention of the M/T ANNA. These amounts are summarized on Exhibit 21.

61.     This action is further brought to obtain security for the additional sums which are recoverable including Plaintiff's anticipated attorneys fees and costs, and interest, all of which are recoverable under Ghanaian law, including but not limited to Order 74 of the High Court (Civil Procedure) Rules, and all of which constitutes a part of the Plaintiff's counterclaim.[4]

---

[4] For purposes of this application, Plaintiff has calculated its recoverable interest based on the simple method of interest calculation. (*See* Ex. 21). Plaintiff however reserves its right to seek and will seek interest in the Ghana proceedings compounded on a daily basis as provided under Ghana law.

62.   The total amount sought to be attached in connection with this Second Cause of Action is **USD $15,476,957.88**.

63.   Therefore, the total amount sought to be attached in connection with the First and Second Causes of Action is **USD $18,044,928.12**.

WHEREFORE, Plaintiff Crescent Africa prays:

a.   That process in due form of law according to the practice of this Court issue against Defendant Ecobank Nigeria, Ltd., citing it to appear and answer the foregoing, failing which a default will be taken against Defendant;

b.   That because Defendant cannot be found within this District pursuant to Supplemental Rule B, that all tangible or intangible property of Defendant up to and including **USD $18,044,928.12** be restrained and attached, including, but not limited to any assets within this District comprising, *inter alia*, cash, funds, credits, debts, bank accounts, correspondent accounts, and/or letters of credit, of, belonging to, due or for the benefit of Defendant Ecobank (collectively hereinafter, "Assets"), including but not limited to Assets in its name and/or being held for its benefit, at Citibank N.A., Commerzbank AG, Deutsche Bank Trust Company Americas, Deutsche Bank Trust Company, N.A., Deutsche Bank Aktiengesellschaft, and Standard Chartered Bank, or at such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein.

c.   That to ensure the attachment of Assets only to the extent they relate to Defendant, and to foster substantial economies in time and expense, a person over 18 years of age who is not a party to this action be appointed pursuant to

    Fed.R.Civ.P. 4(c) to serve process of maritime attachment and garnishment in this action, as set forth in the accompanying Affidavit of Gina M. Venezia.

  d. That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary, including but not limited to an order confirming and recognizing as a judgment of this Court the August 1, 2011, and August 31, 2012, Judgments of the Accra High Court; and

  e. For such other, further and different relief as this Court may deem just and proper, including but not limited to the entry of default as to any property seized in the event a timely response is not filed.

Dated: New York, New York
   November 26, 2012

        FREEHILL HOGAN & MAHAR, LLP
        Attorneys for Plaintiff
        Crescent Africa (Ghana) Ltd.,

      By: _____
        Gina M. Venezia
        80 Pine Street
        New York, NY  10005
        (212) 425-1900
        (212) 425-1901 fax