# EXHIBIT 1

21/12 2009 12 07 FAX  233 21 668669      FUGAR & CO                      ☎002

# IN THE SUPERIOR COURT OF JUDICATURE
## IN THE HIGH COURT OF JUSTICE
### COMMERCIAL DIVISION



**SUIT NO. BDC/97/06**

**BRONOWEN ENERGY TRD. LTD**
**COPTHALL**
**BOX 2331**
**ROSEAU, ST GEORGE**
**00152 COMMONWEALTH OF DOMINICA**

**VRS.**

**COMMERCIAL DIVISION**
1. **CRESCENT AFRICA GH. LTD**
2. **THE VESSEL MT ANNA**

(SGD)
**MRS. G. TORKORNOO**
**JUSTICE OF THE HIGH COURT**

---

### ORDER FOR INTERLOCUTORY INJUNCTION

---

**UPON READING** the Affidavit of Nii Odoi Odotei of H/No. M2, Manetville Estates East Airport, Accra filed on 21/12/06 on behalf of Plaintiff/ Applicant in support of Motion Ex-parte.

**AND UPON HEARING** the submission of NII ODOI ODOTEI ESQ., for the Plaintiff Applicant herein.

**IT IS HEREBY ORDERED** that, the 1st and 2nd Defendants, their Agents, Representatives and Assigns are restrained from discharging the Plaintiff's cargo of Gasoline aboard the 2nd Defendant's vessel in Ghana or any place apart from the Ports of discharge agreed to in the contract of affreightment and on the bill of lading being the Ports of Apapa- Lagos and Ibafon .

**IT IS FURTHER ORDERED** that, the Plaintiff is also given leave to serve the order of injunction together with the writ of summons and statement of claim on the 1st and 2nd Defendant.

CERTIFIED TRUE COPY

COMMERCIAL DIVISION
HIGH COURT, ACCRA
REGISTRAR

21/12 3006 12.30 FAX  233 21 669569       FUGAR & CO                                ☎008

The court grants this order from 21st December 2006 to
15th January 2007 being 25 days and directs that the
applicants repeat this application on notice to the
defendant to be heard by the courts on 15th January 2007
if the need still exists for the injunction to continue.

**GIVEN UNDER MY HAND AND THE SEAL OF THE OF THE COURT
THIS 21ST DAY OF DECEMBER 2006.**

**(SGD)
MS PHILOMENA BREW
R E G I S T R A R**



# EXHIBIT 2

**IN THE SUPERIOR COURT OF JUDICATURE
IN THE HIGH COURT OF JUSTICE
COMMERCIAL DIVISION HELD IN ACCRA ON WEDNESDAY
THE 24TH DAY OF JANUARY 2007
BEFORE HER LORDSHIP MRS. GERTRUDE TORKORNOO**

SUIT NO.BDC97/2006

**BRONWEN ENERGY TRD. LTD.**

VRS.

1.   **CRESCENT AFRICA GH.LTD.**

2.   **THE VESSEL MT. ANNA**

PARTIES:   KOJO NYANTEKYI FOR 1ST DEFENDANT, PLAINTIFF ABSENT

COUNSELS: NII ODOI ODDOTEYE FOR PLAINTIFF

EKOW AWOONOR FOR 1ST DEFENDANT

## RULING

This dispute has arisen out of a transaction with a vessel (2nd defendant) over which the 1st defendant has a time charter agreement and one Transcon Oil Ltd (not party to this suit) has entered into vessel charter agreement to allow Plaintiff to use for lifting of Plaintiff's cargo from one point to another.

The 1st defendant denies knowledge of Transcon Oil and says it only knows a company called Nigacare, which would have capacity to enter into such a vessel charter agreement. The 1st defendant sued this Nigacare for leave to discharge the cargo in Ghana, which led to the Plaintiff instituting the current action.

In considering this application for injunction, the court first notes that the Plaintiff's application for an injunction is supported by the agreement between the Plaintiff and Transcon Oil as owners of the vessel MT Anna although in the course of arguments it

CERTIFIED TRUE COPY

1

became clear that Transcon Oil are not the owners of the vessel and the Plaintiff recognized the 1st defendant's capacity to exercise authority over the vessel as time charterers of the same vessel.

Secondly, the Bill of Lading supporting the Plaintiff's right to the consignment is unsigned leading to the seeming confusion within the 1st Defendant's precincts as to whether the Plaintiff ought to be accepted as the shipper of the consignment held in its time charter vessel or not and which would seem to be the reason for their argument that they cannot recognize the Plaintiff as owners of the consignment.

As well as the above, certain things are also clear to this court.

The 1st Defendant as time charterers of the vessel does not claim ownership of the cargo and is willing to order the release of the cargo as long as it is assured of being indemnified for all its losses and costs including demurrage from delay in discharging the cargo by 13th November 2006 and any outstanding freight payable on the cargo.

The 1st Defendant's counsel has also made it clear that it has since this dispute found that there is one personality behind both Nigacare, the company they have a contract with and Transcon Oil the company purporting to have authority to enter into a vessel charter agreement with Plaintiff to lift Plaintiff's cargo.

It is the considered opinion of the court that on the balance of convenience the Plaintiff must be protected from having its cargo discharged in Ghana since its contract with Transcon Oil is to have the cargo delivered in Nigeria and also the 1st Defendant has no interest in where the cargo is discharged as long as its vessel is made available to it and all costs are recovered. On the other hand of the balance of convenience, the 1st Defendant must also be protected from incurring unrecoverable costs through the confusion arising from Plaintiff failing to secure its rights to undisturbed delivery of its cargo by ensuring that the Bill of Lading covering the shipment of the Cargo is signed and any alleged lack of capacity by Transcon Oil to enter into the vessel charter agreement with Plaintiff.

In the circumstances, this court restrains the defendants from discharging the cargo held in the 2nd Defendant in Ghana or any destination other than the ports of Apapa and Ibafon within the next 15 working days ending 13th February 2007 on condition that

2.

1.   All the parties shall ensure that all documents covering the cargo are properly executed to allow the due discharge of the Cargo at the Plaintiff's direction.

2.   The Plaintiff pays the accrued demurrage from 13th November 2006 to date of discharge at the rate of $7,500 a day as per the terms of their Vessel Charter Agreement to the defendant as the persons sued in this court and obligated by this

court to ensure the due discharge of the cargo to the Plaintiff which demurrage must be paid by the day of discharge of the cargo.

3.   The Plaintiff provides the 1st Defendant with a letter of indemnity issued jointly by the Plaintiff and a prime bank indemnifying the Defendants from any claims, costs expenses incurred as a result of any 3rd Party adverse ownership claims that may arise against the cargo after it has been discharged at the direction of the Plaintiff and released to the custody of Plaintiff.

4.   The Plaintiff provides a bank guarantee issued by Ecobank Nigeria PLC, alleged co owners of the cargo to the 1st Defendant's Bankers - Prudential Bank Ltd. in the sum of $ 1 million to cover any charges, unpaid freight and all other expenses payable to the vessel's owners or persons entitled to such costs owing to failure to discharge the cargo on board MT Anna by the contractual discharge date of 13th November 2006 pending proof of the said costs, charges, freight and expenses and the right to such payment as determined by a court of competent jurisdiction after due adjudication of the claims to such costs, charges, freight and expenses. The bank guarantee is to be issued to the 1st defendant because they are the persons sued in this court and obligated by this court to ensure the due discharge of the cargo

5.   Provided always that if the Plaintiff is unable to take the steps ordered above to allow the discharge of the cargo at Ibafon or Apapa by 13th February 2007, this order shall expire and the defendants shall be at liberty to discharge the cargo on the vessel at any location in order to have free access to their Time Charter Vessel.

The parties are at liberty to file any other processes in this suit to allow for the due settlement of all claims relating to the action.

(SGD)
**MRS. GERTRUDE TORKORNOO**
**JUSTICE OF THE HIGH COURT**

CERTIFIED TRUE COPY

COMMF           OF THE
HIG              CRA
18-11-2011

3

# EXHIBIT 3

IN THE SUPERIOR COURT OF JUDICATURE
IN THE HIGH COURT OF JUSTICE COMMERCIAL DIVISION
HELD IN ACCRA ON TUESDAY THE 20TH DAY OF MARCH 2007
BEFORE HER LADYSHIP JUSTICE GERTRUDE TORKORNOO [MRS]

SUIT NO. BDC/97/06

BROWEN ENERGY TRADING LTD          = = =          PLAINTIFF

VRS

1. CRESCENT AFRICA GH. LTD & ANOR          = = =          DEFENDANTS

---

PARTIES:            Absent

COUNSEL:            Nii Odoi Odoteye Esq. for Fugar Esq. for Plaintiff/Respondent

                    Awoonor Esq. for Defendant/Applicant

Note:               Motion to set aside discontinuance.

                    Discontinuance could not been done without leave.

                    There was a pending Order given on application of the
                    plaintiff which had not expired at the time of discontinuance
                    and which directed certain actions to be taken.

                    Defendant had undertaken actions as directed by Court and
                    incurred costs.  Action disrespectful of court.

                    Plaintiff opposed to application.   Order 17 rule 1 allows an
                    action to be discontinued without leave of the Court expect in
                    the case when there is an interlocutory application.

                    At time of discontinuance, there was no defence.

                    CILV v Chiavelli 1968 GLR at 160.

BY COURT:           In order 17 rule 2 (1)

1

The rules of Court allows a plaintiff to discontinue his action without leave of court if no defence has not been served on him except in the case when an Interlocutory application is pending before the Court.

In the present case, an interlocutory application had been placed before the court and orders made pursuant to the application.

These orders of the court had to be obeyed and refusal to do so would constitute contempt of court unless any of the parties sought a change of the orders through the court.

Counsel for Respondent has argued that as applicants the plaintiff found itself unable to obey the courts conditions for granting the injunction and therefore discontinued the action.

Unfortunately the net effect of that filing of notice of that discontinuance was:

1) A refusal to obey the unassailed orders of the court thereby calling its authority and ability to bring justice to the parties into disrepute

2) To make impossible the execution of the orders of the court by either party thereby allowing a potential situation of chaos to occur.

It is my firm view that the option to discontinue an action without leave of court when no defence has been served does not cover situations an interlocutory application has been placed before court and an interlocutory application includes an application whose orders are still not complied with.

2

An application terminates with the compliance of orders made pursuant to it, otherwise the court's function would be reduced to the robotic action of listening to arguments and nothing more.  Applications are three way discourses – from arguments by applicant respondents and rulings by the judge was hears then. And a ruling by a judge does not terminate unless complied with, varied or set aside.

In view of the pendency of the court's orders following their own application the plaintiff was totally wrong in discontinuing their action without leave of court.

That application for leave would have given the court the opportunity to tie up the untidy ends of the part of orders that has not been complied with and make appropriate orders as to costs.

In the current case, I set aside the discontinuance of the action only in so far as it relates to the orders that remained uncomplied with at the time of the discontinuance.

The parties are ordered to appear before the court, give an account and report on compliance with the court's orders and allow the court the ability to exercise its peace settling function of adjudicating on the rights and obligations of the parties vis a vis those orders.

If the plaintiff wishes to set aside the rest of its claims leave is granted to it to do so – but only after the matter of the

3

pending orders have been dealt with and the issue of costs as well.

Costs of ¢5,000,000.00. award.

Adjourned to 9.00am on March 27th 2007.


**[SGD]**
**JUSTICE GERTRUDE TORKORNOO [MRS]**
**JUSTICE OF THE HIGH COURT**
**(COMMERCIAL DIVISION)**

4

# EXHIBIT 4

# CRESCENT AFRICA

30th March 2007

The Managing Director
Ecobank plc
2, Ajose Adeogun street,
Victoria Island,
Lagos - Nigeria

Dear Sir,

## INVOICE IN RESPECT OF STATUTORY PAYMENT OBLIGATIONS ARISING OUT OF SHIPPERS DEFAULTS

We are obliged under the provisions of international maritime laws and conventions governing the maritime carriage of goods to send you the attached invoice. With urgency and due respect we hereby demand payment be made forthwith by Ecobank PLC to our account detailed in the attached invoice.

To the extent that the shipper/ sub charterers Bronwen have clearly evinced by conduct their patent inability to honour payments in respect of the carriage and costs associated with the retention of cargo of about 5400 metric tons of Premium Motor Spirit furthermore confirmed in various Court pleadings and hearings. We are by law required to formally notify you as the consignee of your co-owner/ client's wilful defaults or impecuniosity. Hereupon this demand is made for you to please effect payments in the next seven days from the date of this letter and take delivery of the cargo aboard our vessel the MT ANNA, immediately.

Should payment not have been made as stipulated to enable us deliver the cargo and release the Bills of Lading to Ecobank PLC, we may be compelled to exercise our lawful rights against the cargo by virtue of a judicial sale albeit with some reluctance.

Accordingly our lawyers in Lagos, Messers Ajumogobia & Okeke have instructions in readiness to proceed to recover sums lawfully due and owing under the Tanker Voyage Charter and Bills of Lading provisions without further ado. Meanwhile please pay attention to the enclosed terms of the extant Court order which we intend to register for enforcement in other common law jurisdictions.

Kindly acknowledge receipt, meanwhile we look forward to your prompt payment hereon.

Yours faithfully,


Dr. Kojo Owusu-Nyantekyi
Managing Director

## ENCL: INVOICE DATED 30 MARCH 2007, COPY OF COURT ORDER OF 24 JANUARY 2007, COPY OF EXTRA EXPENSES INVOICE.

22 DR. ISERT RD. NORTH RIDGE, P.O. BOX CT 2629, CANTONMENTS, ACCRA-GHANA
Telephone: +233 243 635 382 Facsimile: +233 21 244 900 E-mail: cresafric@hotmail.co.uk
CRESCENT AFRICA (GHANA) LTD. (REG NO. 36096)

30th March, 2007

**CONSIGNEE:**

ECOBANK PLC
2, AJOSE ADEOGUN STREET,
VICTORIA ISLAND,
LAGOS - NIGERIA

**ATTN: THE MANAGING DIRECTOR**

**SHIPPER:**

BRONWEN ENERGY TRADING LTD
COPTHALL P. O. BOX 2331
ROSEAU ST, GEORGE – DOMINICA

C/O: BRONWEN ENERGY TRADING NIGERIA LTD
        3B TAOFEEK LAWAL STREET
        S.W. IKOYI – LAGOS.

**ATTN: PATRICK NDIOMU/ DIDI UDIOMU/ BUNMI OJUOLA**

INVOICE IN RESPECT OF STATUTORY LIEN AGAINST A CARGO OF 5442 MTS OF PMS  ABOARD M/T ANNA AND PURSUANT TO BILL OF LADING.

REF: MT "ANNA" – BRONWEN ENERGY TRADING LTD AND ECOBANK PLC – PURPORTED CO-OWNERS.

(From LT 11: 15 on 13th Nov 2006, till 11:15hrs 31st Mar. 2007)
139 Days at a rate of US$ 7,500 pdpr in compliance
With terms of paragraph B. of Court order          US$ **1 042 500.00**


OTHER PERTINENT COSTS:

(A) Legal fees incurred by Crescent          US$ 150,000.00
(B) Extra Expenses & Head owners costs          US$ 149,895.00

**TOTAL DUE**          **US$ 299,895.00**

AMOUNT DUE OWNERS  AS AT 31st March 2007-

US$ (1,042,500.00 +299,895.00) = US$ 1 342 395.00

TOTAL DUE TO CRESCENT AFRICA        =       US$ 1 342 395.00

TOTAL DUE TO OWNERS being US$ 1 342 395.00 (One Million, Three Hundred and Forty Two Thousand Three Hundred and Ninety Five Dollars only) payable BBB.

*Kindly therefore arrange payment by telegraphic transfer to the following details:-*

PRUDENTIAL BANK LIMITED

8 NIMA AVENUE

PMB GPO

RING ROAD CENTRAL

ACCRA-GHANA

SWIFT CODE   : PUBGHAC

ACCOUNT NO. : USD ACCOUNT NO: ████████████

BENEFICIARY  : CREDIT: CRESCENT AFRICA (GH) LTD AS AGENTS

Ref: M/T ANNA

For and on behalf of
CRESCENT AFRICA GHANA LTD.

# EXHIBIT 5

IN THE SUPERIOR COURT OF JUDICATURE
IN THE HIGH COURT OF JUSTICE
COMMERCIAL DIVISION HELD IN ACCRA ON MONDAY
THE 2ND DAY OF APRIL 2007
BEFORE HER LORDSHIP MRS. GERTRUDE TORKORNOO

**SUIT NO.BDC97/2006**

BRONWEN ENERGY TRD. LTD.

VRS.

1. CRESCENT AFRICA GH.LTD.
2. THE VESSEL MT. ANNA

PARTIES:    DR. KOJO NYANTAKYI FOR 1ST DEFENDANT PRESENT

COUNSELS: NII ODOI ODDOTEYE FOR PLAINTIFF/RESPONDENT

EKOW AWOONOR FOR 1ST DEFENDANT/APPLICANT

CERTIFIED TRUE COPY

REGISTRAR
COMMERCIAL DIVI
HIGH COURT, ACCRA

## RULING

The exercise of a court's discretion in awarding costs is to be guided by principles set out in Order 74 of the High Court (Civil Procedure) Rules, 2004 C.I. 74. The court is to assess the amount of costs to be awarded and in making this assessment, the court is to design the costs to provide

   a. Compensation for expenses reasonably incurred as a result of the proceedings and court fees. Such expenses may include travel expenses reasonably incurred in relation to the proceedings
   b. Reasonable remuneration for the lawyer in respect of work done by the lawyer.

The court is also to have regard to

   c. the length and complexity of the proceedings and
   d. conduct of the parties and their lawyers during the proceedings when awarding costs.

This is a case in which the Plaintiffs came to court because of information that had reached them that 'the 1st defendant had ordered the 2nd defendant not to discharge the Plaintiff's cargo at the designated port of Apapa or Ibafon but at Tema or Takoradi –both within Ghana' (see Paragraph 13 of Statement of Claim filed on 21st December 2006). Based on this information and apprehension of irreparable damage that such discharge would cause to Plaintiff's interests, the Plaintiff came exparte to this court for an order of injunction to

restrain this discharge of cargo. This was on the 21st December 2006. Unknown to this court but known to the Plaintiffs, the defendants had actually obtained permission from my brother Justice Kwofie in another suit to make this discharge of cargo in order to mitigate losses it was incurring as a result of carrying the plaintiff's cargo aboard the 2nd defendant vessel in certain circumstances. The plaintiffs failed or refused to inform the court when seeking this injunction about my brother's order.

In order to prevent irreparable damage to plaintiff and preserve the status quo until the Christmas season was over, this court granted an interim injunction to last until 15th January 2007. Because of the court's order, which was given for 25 days, the defendants were compelled to keep Plaintiff's cargo on board its vessel from 21st December 2006 to 15th January 2007. The defendants obeyed my order and kept the cargo on board notwithstanding the earlier order they had obtained from my brother which gave them leave to discharge the cargo in Ghana.

The plaintiff's repeated their application for injunction on notice to the defendants on 16th January 2007, which was heard on 22nd January 2007. On that date, the court heard both parties, and realized that any order compelling the defendants to discharge the cargo in Nigeria must be balanced by an order protecting firstly the defendant's interest in the demurrage caused by the earlier order of 21st December 2006 and undetermined difficulties in discharging the cargo into plaintiff's custody since 13th November 2006, secondly, losses that defendants were incurring as a result of being restrained from making the vessel available for work in Ghana, and expenses incurred as a result of obeying the court's order to discharge the cargo in Nigeria. The court saw the need to make those protecting orders because of the facts that were concealed from this court in order to obtain the earlier order of 21st December 2006 namely – the fact of my brother Kwofie's order giving the vessel permission to release its cargo in Ghana, the fact that Transcon Oil with whom the plaintiff's had a vessel charter agreement had no relationship with the defendants who were the time charterers of the vessel from its owners, the fact that Transcon Oil were not the owners of the vessel but had represented itself as such in the vessel charter agreement on which the plaintiffs had relied to get the order of 21st December 2006.

Prior to granting the injunction and protecting orders, in line with the ethos of the commercial court, the court conducted extensive enquiries from the two counsels to determine the most commercially viable solution for ensuring that the plaintiff had access to its cargo (which defendant did not purport to own) and defendant had access to its vessel obtained in the time charter free of the plaintiff's cargo.

Following the orders of the court, the defendant once again obeyed this court's orders and headed to Nigeria to discharge the cargo as directed by the court. The Plaintiff, who had obtained the order, however said it could not obey the court's orders and without seeking an order to set aside or review the injunction and its protecting orders, decided not to obey the court's orders and provide the guarantees ordered by the court. It simply discontinued its action without leave of court. In order to protect the integrity of its orders granted as a result of the plaintiff's interlocutory application and do justice to the parties to the parties as required by Order 17 of the CI 47, this court ruled on 20th March 2007 that the discontinuation of the plaintiff's suit as regards the interlocutory order obtained by the plaintiff without leave of court was wrong and unlawful and reinstated the case with reference to the interim orders. This order regards costs being awarded for the discontinuation of the injunctive orders.

It is now confirmed by both parties that while taking steps to obey this court's order obtained by the plaintiff on 22nd January 2007, the defendant became arrested twice in Nigeria by the Plaintiff and is still being compelled to carry the Plaintiff's cargo while being subjected to

these arresting orders in Nigeria. The defendant has had to instruct lawyers to defend it in the arrest cases. The defendant is praying the court to consider all these expenses in granting the order of costs. The defendant is also praying the court to grant costs covering its loss of revenue as a result of the court's two injunction orders, which prevented it executing its agreement with Tema Oil Refinery.

The plaintiff's counsel argues that costs should be limited to the expenses incurred in filing the case, traveling to court to defend this case and remunerating lawyers for this case only. He argues that anything else constitutes damages which is different from costs. He's asked the court to distinguish between costs – which must relate to a expenses incurred as a result of a court action and damages – which must relate to a party's action leading to loss and a cause of action.

It is my humble and candid interpretation of Order 74 that costs must cover all losses reasonably incurred as a result of a court action and that is why the range of guidelines go beyond filing and lawyer's fees and expenses to the length and complexity of a case and the conduct of parties. It is obvious that the rules direct a court to exercise its discretion to ensure that if a court action causes parties or their lawyers to incur losses – whether in fees, traveling expenses or other expenses as a result of the conduct of the other party – then those costs must be compensated. Costs however must be clearly distinguished from damages, which is the reasonable compensation for losses flowing from the actions of a party, which that party should have anticipated at the time of indulging in that action.

In awarding these costs, I am restricting myself strictly to losses and expenses incurred as a result of the orders issued by this court on the plaintiff's application both on 21st December 2006 and 22nd January 2007, the conduct of the plaintiff in obtaining those orders without giving the court full information on the background of existing orders by a court of parallel jurisdiction and the relationship between the parties, the conduct of the defendant in obeying those orders at the peril of financial loss even though they had another order from a court of equal jurisdiction, and the conduct of the plaintiff in refusing to obey the very orders it had obtained from me.

I award costs of ¢2,000,000 as reasonable compensation for filing expenses, ¢18,000,000 as reasonable compensation for the defendant in making appearances in this court on six occasions to defend this action only to have the court's order disobeyed while they obeyed their part of it , $20,000 as reasonable compensation for the 1st defendant in traveling to the Nigerian courts to defend the 2nd defendant against arrests when it was complying with this court's orders, $80,000 as reasonable remuneration for defendant's counsel being 2% of the $4m value of the cargo in issue, $80,000 as reasonable Counsel's fees for defending itself against arrests in Nigeria by the same Plaintiff who got this court to order the vessel to go to Nigeria and $150,000 as reasonable compensation for sundry expenses incurred in keeping the plaintiff's cargo on board the vessel and carrying it to Nigeria all in compliance with the court's orders from 21st December 2006 to 2nd April 2007 when it could have mitigated its losses by discharging the cargo in Tema or Takoradi as per my brother Kwofie J.'s order which was not brought to my notice when the restraining orders were sought.

In sum. I award costs of ¢20,000,000.00 and $330,000.

Order 17 rule 2 (3) directs that "the court may before, during or after the hearing or trial upon such terms as to costs and as to any other action as may be just, order the action to be discontinued or any part of the alleged cause of action to be struck out" In order to do what is just, in consonance with Order 17 rule 2 (3) as part of orders made regarding this leave to discontinue, the Plaintiff is ordered to pay the demurrage incurred by the defendant from 21st December 2006 to 2nd April 2007 at the rate of $7,500 a day – a sum which is not disputed by either party.

**(SGD)**
**MRS. GERTRUDE TORKORNOO**
**JUSTICE OF THE HIGH COURT**

CERTIFIED TRUE COPY

REGISTRAR

COMMERCIAL DIVISION OF THE
HIGH COURT, ACCRA