UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
----------------------------------------X
```

CRESCENT AFRICA (GHANA) LTD.,

                Plaintiff,

   - against -

ECOBANK NIGERIA PLC.,

                Defendant.

```
----------------------------------------X
```

12 Civ. 8583 (RWS)

OPINION

A P P E A R A N C E S:

    Attorneys for Plaintiff

    FREEHILL, HOGAN & MAHAR LLP
    80 Pine Street
    New York, NY 10005
    By:  Gina Venezia, Esq.

    Attorney for Defendant

    PHILLIPS NIZER LLP
    666 Fifth Avenue
    New York, NY 10103
    By:  Jon S. Brooks, Esq.
        Chryssa V. Valletta, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/15/13

**Sweet, D.J.**

Defendant Ecobank Nigeria PLC ("Defendant" or "Ecobank") has moved for (1) an order pursuant to Rule E(4)(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule E(4)(f)") vacating this Court's November 27, 2012 Order Directing Clerk to Issue Process of Maritime Attachment and Garnishment and Appointing Person to Serve Process Pursuant to Rule 4(c) and Concerning Scope of Service (the "Order of Attachment") in favor of plaintiff Crescent Africa (Ghana) Ltd. ("Plaintiff" or "Crescent"); and (2) an award of the costs and attorneys' fees expended in defending the instant action.

Upon the conclusions set forth below, the motion is granted in part and denied in part.

**Prior Proceedings**

On November 27, 2012, plaintiff Crescent filed a verified complaint ("Complaint") asserting two causes of action: (1) enforcement of a judgment allegedly awarded in

1

favor of Crescent and against defendant Ecobank by the
Superior Court of Judicature in the High Court of Justice,
Commercial Division, Accra, Ghana (the "Accra Court"); and (2)
security for the damages anticipated from a claim by Crescent
against Ecobank pending in the Accra Court (the
"Counterclaim").  On the same day, the Order of Attachment was
issued in the amount of $18,044,928.12.

On December 5, 2012, Ecobank filed an order to show
cause as to why an order should not be issued pursuant to Rule
E(4)(f) vacating the Attachment.  A show-cause hearing was
held on December 12, 2012, at the conclusion of which the
Court requested additional briefing from the parties.  The
parties submitted post-hearing briefing as well as additional
communications to the Court, see Dkt. Nos. 15, 16, 18, 19, 24-
27.[1]  Ecobank's motions were marked fully submitted on January
14, 2013.

---

[1] One of these submissions, a letter from Jon S. Brooks,
counsel for Ecobank, dated January 10, 2013, Dkt. No. 25,
contained a request for an award of attorneys' fees and costs
that the Court has elected treat as a motion and consider
alongside Ecobank's motion to vacate the Attachment.

**The Facts**

For the purposes of the instant motion, the facts set forth in the Complaint and the documents it incorporates are assumed to be true, and factual disputes are resolved in favor of Plaintiff.  See Jakil, S.p.A. v. Agrimpex Co., Ltd., No. 08 Civ. 5613 (DC), 2009 WL 57479, at *1 (S.D.N.Y. Jan. 8, 2009).  Additional facts are drawn from the affidavits and other documents submitted by the parties.[2]

Plaintiff Crescent is a foreign business entity organized under the laws of the Republic of Ghana, and was at the time relevant to the instant action engaged in the business of chartering vessels for use in the transportation of petroleum products between ports along the western coast of Africa.  Verified Complaint ("Compl.") ¶ 2.  Defendant Ecobank is a foreign business entity organized under the laws of Nigeria, and was at the time relevant to this action in the business of banking and finance, both in Africa and throughout the world.  Id. ¶ 3.

---

[2] A court may consider evidentiary materials outside of the pleadings when evaluating a challenge to its subject matter jurisdiction. See Zappia Middle E. Constr. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000).

3

In 2006, Crescent was the owner of a ship named the M/T Anna, a motor tanker used to transport fuel. Id. ¶ 4. In or about June 2006, Crescent entered into a two-year charter agreement with non-party TOR to transport consignments of oil between two African ports, and the M/T Anna was designated to perform that transportation. Id. ¶ 5. In the fall of 2006, TOR was not in immediate need of the M/T Anna's transportation services, and therefore agreed to permit Crescent to sub-charter the Anna on a "spot-voyage" basis. Id. ¶ 6. Pursuant to that agreement, Crescent sub-chartered the M/T Anna to perform a 6.5 day voyage, lasting from November 7, 2006 to November 13, 2006, wherein the M/T Anna would load a cargo of premium gasoline (the "Gasoline") that was at that point stored in a ship moored off the Nigerian coast, and deliver the Gasoline to the port at Ibafon, Lagos, Nigeria. Id. ¶ 7. Bronwen Energy Trading ("Bronwen"), which is not a party to this action, was the shipper and owner of the Gasoline, while Ecobank was the consignee of the Gasoline and, according to Crescent, also its co-owner alongside Bronwen. Id. ¶ 8.

After a delay that Crescent alleges was caused by Bronwen and/or Ecobank, see Compl. ¶ 9, the M/T Anna was

4

finally loaded with the Gasoline on November 22, 2006, but thereafter was not able to proceed to the port at Ibafon because Bronwen and Ecobank had failed to arrange for suitable berth and take delivery of the cargo, and had also failed to pay Crescent for the demurrage that had accrued during the delay prior to the loading of the Gasoline. Id. ¶ 12.

On December 5, 2006, TOR demanded to have use of the M/T Anna pursuant to its charter agreement with Crescent, and asked that Crescent order the M/T Anna return to Ghanian waters immediately. Id. ¶ 13. Crescent complied with the request and ordered the M/T Anna, which at that time was still carrying the Gasoline, to return to Ghanian waters, and made arrangements for the M/T Anna to discharge and store the Gasoline at a Ghanian port so that the ship could resume its contractual duties for TOR. Id. ¶¶ 14-17. Concurrently, Crescent also filed an application with the Accra Court seeking judicial authorization to discharge and store the Gasoline. Id. Justice Kwofie of the Accra Court granted Crescent's application on December 19, 2006, but on December 21, 2006, a different Accra Court judge, Justice Torkornoo, granted an ex-parte application by Bronwen for an injunction (the "Injunction") prohibiting the M/T Anna from discharging

5

the Gasoline and requiring the M/T Anna to return to Nigeria for discharge of the Gasoline there.  Id. ¶¶ 18-19.  As a "prudent commercial measure," Crescent decided to comply with the Injunction, which the Accra Court had put into effect until January 15, 2007.  Id. ¶ 19.

On January 16, 2007, Bronwen filed an application with the Accra Court for a continuation of the Injunction, and on January 24, 2006, the Accra Court issued an order directing that the Gasoline be discharged in Nigeria, but conditioning such discharge on (1) Bronwen paying Crescent for the accrued vessel demurrage (2) Bronwen providing Crescent with a letter of indemnity against claims by any other entities asserting ownership of the Gasoline; and (3) Bronwen providing a bank guarantee issued by Ecobank for $1 million to cover, *inter alia*, any charges, unpaid freight, or other expenses due to Crescent.  Id. ¶ 23.

Thereafter, Crescent ordered the M/T Anna to sail to Nigeria, but once it arrived there, Bronwen and Ecobank attempted to force the discharge of the Gasoline without having adhered to any of the provisions of the Accra Court's order of January 24, 2007.  Id. ¶¶ 23-24.  Bronwen also

6

discontinued its action in the Accra Court without having complied with the court's orders. Crescent subsequently asked the Accra Court to set aside the discontinuance and reinstate its January 24, 2007 order and the various conditions set forth therein, id. ¶ 26, and the Accra Court granted the application.  Id. ¶ 27.

On April 2, 2007, the Accra Court awarded Crescent a total of $1,097,200 in damages arising from the delays suffered by the M/T Anna as a result of Bronwen's actions (the "April 2007 judgment").  Id. ¶ 29.  The April 2007 judgment was issued only against Bronwen.  See Compl. Ex. 5.

After Crescent's efforts to collect the judgment from Bronwen proved to be unsuccessful, Crescent applied to the Accra Court for leave to enforce the judgment against Ecobank, which Crescent asserted was a co-owner of the Gasoline.  See Compl. Ex. 11.  On July 31, 2007, the Accra Court granted Crescent's application to enforce the April 2007 judgment against Ecobank. Compl. ¶ 37.

On February 28, 2008, the Accra Court issued an order whose substance and import was a point of contention

7

between the parties at the inception of this action.[3]  In the
Complaint, Crescent has alleged that in the February 28, 2008
order, "the Accra Court ruled that Ecobank was not liable for
execution of the court's January 24, 2007 [order], which
pertained to the conditions under which the [Injunction] would
remain in effect; *but Ecobank nevertheless remained liable for
the orders issued on April 2, 2007 and July 31, 2007*."  Id. ¶
40 (emphasis added).  Ecobank, however, has contended that the
February 28, 2008 order of the Accra Court in fact had the
effect of setting aside the July 2007 order, meaning that in
the wake of the February 28, 2008 order, Ecobank was no longer
was liable to Crescent for the April 2007 judgment.
Declaration of Adenike Laoye In Support of Motion to Vacate
Order ("Laoye Decl.") ¶¶ 19-24.

        On April 24, 2008, Ecobank was joined as a defendant
to Crescent's counterclaim against Bronwen, in which Crescent
had sought damages arising out of the allegedly wrongful use
and detention of the M/T Anna.  Compl. ¶ 41.  Crescent was

---

[3] As explained below, on January 10, 2013, the Accra Court
issued an order expressly supporting Ecobank's position on the
issue, see Dkt. No. 25 (Letter from Jon Schuyler Brooks dated
January 10, 2013), Ex. 1, and Crescent has since conceded the
point, see Dkt. No. 26 (Letter from Gina M. Venezia dated
January 11, 2013).

granted leave to serve its counterclaim on Ecobank outside of the jurisdiction.  Id. ¶ 42.

On August 1, 2011, Crescent obtained what it has contended is an order from the Accra Court,[4] which cites the April 2007 judgment and the July 31, 2007 order and states that Crescent was entitled to total damages of $2,006,266.63,[5] enforceable against both Bronwen and Ecobank.  Id. ¶ 43; Compl. Ex. 16.[6]

Crescent then sought to register the Accra Court's judgment against Ecobank with the United Kingdom's High Court of Justice (the "UK Court"), and on February 11, 2011, Crescent obtained an order from the UK Court to that effect. See Laoye Decl. Ex. B.  Ecobank subsequently applied to the UK Court for an order setting aside its February 11, 2011 order,

---

[4]  Ecobank has contended that this document, which is characterized by Crescent as a "judgment" against Ecobank, "is not a valid judgment or order and has no legal effect."  Order to Show Cause ¶ 28.

[5]  This amount was essentially derived from the damages awarded in the April 2007 judgment plus interest accrued over the intervening years.  See Compl. Ex. 16.

[6]  On August 31, 2012, the Accra Court re-issued the August 1, 2011 order in final format.  Compl. ¶ 46; Declaration of Ekow N. Awoonor ("Awoonor Decl.") ¶ 18.

and on January 31, 2012, the UK Court granted Ecobank's
application and set aside the registration previously issued
against Ecobank.  In so doing, the UK Court found that there
was not, in fact, any pending judgment against Ecobank because
the Accra Court's ruling on July 31, 2007 that expanded its
April 2007 judgment (originally issued only against Bronwen)
to include Ecobank "was set aside" by the Accra Court's
February 27, 2008 order.  Id.


        Crescent filed the instant action on November 27,
2012, asserting two causes of action.  The first cause of
action sought enforcement of the Accra Court's judgment
against Ecobank and in favor of Crescent (the "April
2007/August 2011 judgment").  Compl. ¶¶ 51-58.  The second
cause of action sought security for Crescent's counterclaim
against Ecobank, which is currently pending in the Accra
Court.  Id. ¶¶ 59-63.  Based upon the contents of the
Complaint and the accompanying affidavit and exhibits, the
Court issued an attachment on Ecobank's assets in the amount
of $18,044,928.12, which is the sum total of (1) the amount
that Crescent has contended it is owed for the April
2007/August 2011 judgment, and (2) the damages that Crescent
has contended it anticipates being awarded for its pending

10

counterclaim against Ecobank.

Ecobank subsequently submitted an application to the Accra Court seeking to (i) restrain Crescent from purporting to enforce the April 2007/August 2011 judgment in the United States or any other foreign jurisdiction, and (ii) set aside the entry of judgment against Ecobank. See Dkt. No. 25, Ex. 1, Orders #1 & #2. On January 10, 2013, the Accra Court granted Ecobank's application in full, and expressly found that the Accra Court's issuance of the August 2011 order, which registered the judgment against Ecobank, "elided the order of this court made on 27th February 2008 which had set aside the order of 31st July 2007 allowing Ecobank Nigeria to be the subject of enforcement of the earlier orders for cost." Id., Order #2. The Accra Court also noted that "[any] attempt to enforce against Ecobank [] the orders . . . made against Bronwen, [which were] expanded to include Ecobank [] on 31st July 2007, and set aside on 27th February 2008 so far as Ecobank [] is concerned, could only be a product of mischief, conducted with the full knowledge that there was no such order subsisting against Ecobank [] after 27th February 2008." Id., Order #1.

11

Following the Accra Court's issuance of the two orders dated January 10, 2013, Crescent submitted a letter to the Court dated January 11, 2013 in which Crescent acknowledged that the Accra Court's January 10, 2013 orders effectively destroyed the basis for its first claim in the instant action, and stated that as a result of that ruling Crescent has abandoned that claim and "voluntarily released the funds pertaining to the first claim . . . ."  Dkt. No. 26 (Letter from Gina M. Venezia dated January 11, 2013).

**Crescent's Counterclaim Is A Valid Prima Facie Admiralty Claim**

On a motion to vacate an order of maritime attachment, the Court looks not to the merits of the underlying claim, but to whether the requirements of the Supplemental Rules have been met, including the pleading requirements. See Navision Shipping A/S v. Yong He Shipping (HK) Ltd., 570 F. Supp. 2d 527, 533 (S.D.N.Y. 2008) ("As to [Defendant's] contention that the Court should dismiss the underlying action pursuant to Rule 12(b)(6), or in the alternative grant summary judgment, the argument is misplaced. It makes little sense to apply Rule 12(b)(6) or Rule 56 here. The merits are not being adjudicated in this case.").

12

An attachment pursuant to Rule B may issue if the plaintiff seeking the attachment meets the filing and service requirements of Rules B and E and shows that "1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006). Further, "Rule E(4)(f) clearly places the burden on the plaintiff to show that an attachment was properly ordered and complied with the requirements of Rule B and E." Id. at 445 n. 5. Consequently, "a district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E." Aqua Stoli, 460 F.3d at 445.

Ecobank has contended that the attachment should be vacated because Crescent has failed to meet its burden with respect to the first element of the standard set forth above, in that Crescent has not shown that its Counterclaim against Ecobank is a valid prima facie admiralty claim.[7] The

---

[7] As noted above, Crescent has abandoned its first cause of action, see Dkt. No. 26, so the instant motion only

determination of whether a given cause of action is considered
to be a "valid prima facie admiralty claim" requires a two-
step analysis. Al Fatah Int'l Nav. Co. Ltd. v. Shivsu
Canadian Clear Waters Tech. (P) Ltd., 649 F. Supp. 2d 295, 298
(S.D.N.Y. 2009). "First, the court must determine that the
claim is an admiralty claim," i.e., that the claim "sounds in
admiralty." Id. "Second, the court must determine that the
claim is facially sound, that is, that the claim is, on its
face and without investigation, sound or well-founded." Id.

      With respect to the first step in the analysis, the
Counterclaim is "decidedly salty," Folksamerica Reinsurance
Co. v. Clear Water of New York, 413 F.3d 307, 318 (2d Cir.
2005), as it seeks recovery for demurrage and losses stemming
from the allegedly unlawful detention of the M/T Anna, see
Laoye Decl. Ex. D. ("Amended Counterclaim"), and is therefore
easily characterized as an admiralty claim. See, e.g.,
Mediterranean Shipping Co. (USA) v. Rose, No. 08 Civ. 4303
(DLC), 2008 WL 4694758, at *3 (S.D.N.Y. Oct. 23, 2008).

---

necessitates analysis of Crescent's second cause of action,
which is premised upon the Counterclaim.

With respect to the second step, before reaching the
substantive aspect of the analysis, *i.e.*, whether or not the
Counterclaim is facially sound, a threshold issue must be
addressed: whether the question of facial soundness is to be
answered from the perspective of U.S. or foreign — in this
case, Ghanian — law.  Although some courts in this District
have concluded that foreign law is to be applied at this step
of the analysis,[8] see, e.g., Al Fatah Int'l Nav. Co. Ltd. v.
Shivsu Canadian Clear Waters Tech. (P) Ltd., 649 F. Supp. 2d
295 (S.D.N.Y. 2009), this Court has previously adopted the
position that the analysis is governed by United States law,
see Kulberg Finances Inc. v. Spark Trading D.M.C.C., 628 F.
Supp. 2d 510, 516 (S.D.N.Y. 2009), because, in the words of
Judge Van Pelt Bryan:

> If the law of the place of the transaction
> is applied, the jurisdiction of a federal
> admiralty court would be dependent upon
> the peculiarities of particular foreign
> law and jurisdiction would vary from
> nation to nation. Such an interpretation
> of this court's admiralty jurisdiction
> would be contrary to the principal purpose
> behind the creation of federal admiralty
> jurisdiction — the establishment of a

---

[8] "There does not appear to be any dispute that U.S. law
governs [the first step of the analysis, *i.e.*,] whether the
court has admiralty—in other words, subject matter—
jurisdiction." Al Fatah, 649 F. Supp. 2d at 298 n. 4.

            'general system of maritime law with
            uniform operation.'

Wall St. Traders, Inc. v. Sociedad Espanola de Construccion
Naval, 245 F. Supp. 344, 350 (S.D.N.Y. 1964)(quoting Detroit
Trust Co. v. The Thomas Barlum, 293 U.S. 21, 43 (1934)).
Accordingly, American maritime law is applied to determine
whether Crescent's Counterclaim is a facially sound admiralty
claim.  See Kulberg, 628 F. Supp. 2d at 516.


        The Counterclaim seeks damages "arising out of
[Ecobank's] wrongful use and detention of the M/T ANNA and its
failure to comply with its obligations under the contract of
carriage."  Compl. ¶ 33.  Ecobank has contended that the claim
is facially unsound because Ecobank was not a co-owner of the
Gasoline, but rather was merely a secured creditor whose loan
to Bronwen was secured by the Gasoline, and thus under Second
Circuit law, Ecobank cannot be held liable for the damages
sought by Crescent.  Defendant's Reply Memorandum of Law in
Support of Its Motion to Vacate the Court's November 27, 2012
Order of Maritime Attachment and Garnishment ("Def's Reply")
at 4 (citing A/S Dampskibsselskabet Torm v. Beaumont Oil Ltd.,
927 F.2d 713 (2d Cir. 1991)).  However, Crescent has alleged
in its Counterclaim that Ecobank, in addition to being the

                            16

"financier" of the Gasoline, was also "co-owner with [Bronwen]

of the [Gasoline]," and furthermore that Ecobank "wrongfully

and illegally caused the arrest of [the M/T Anna] . . . ."

Amended Counterclaim ¶¶ 6-13.  Accordingly, a factual dispute

exists between Crescent and Ecobank as to (i) whether Ecobank

was the owner of the Gasoline or merely a creditor whose loan

was secured by the Gasoline, and (ii) whether Ecobank was

responsible for the arrest of the M/T Anna.

In analyzing whether a plaintiff has stated a valid

prima facie admiralty claim, all factual disputes are resolved

in favor of the plaintiff. See Jakil, 2009 WL 57479, at *1;

see also Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping

Ltd., 475 F. Supp. 2d 275, 279 (S.D.N.Y. 2006) ("[I]t would

defeat the purpose of attachment—preserving defendants' assets

in case plaintiff is able to prevail at trial or on summary

judgment—to require at this stage that plaintiffs asserting a

'valid prima facie maritime claim' prove that the facts in the

complaint are true").  Moreover, the mere existence of a

"factual dispute[] between the parties . . . militate[s]

against immediate vacatur [of the attachment]," Troitsk

Shipping Inc. v. M.R.S. Oil & Gas Ltd., No. 09 Civ. 7559 (DC),

2009 WL 3241382, at *3 (S.D.N.Y. Oct. 8, 2009), because the

17

"plaintiff's burden is not to prove by a preponderance of the evidence that it is entitled to relief, but merely to show reasonable grounds for an attachment, [and thus] the appropriate course is to allow discovery to go forward and give the parties an opportunity to prove their versions of the facts . . . ."  Wajilam, 475 F. Supp. 2d at 281.  Accordingly, Crescent's allegations regarding Ecobank's role in the events giving rise to the Counterclaim are sufficient to state a facially sound claim against Ecobank for the purposes of determining whether or not a valid prima facie admiralty claim exists.

**Ecobank Is Awarded Attorneys' Fees And Costs Expended In Defending Against Crescent's First Cause Of Action**

Ecobank has contended that it is entitled to an award of the attorneys' fees and costs that it expended in defending against the first cause of action alleged in the Complaint, i.e., enforcement of the Accra Court's August 2011 judgment.  See Dkt. No. 25.  "[D]istrict courts are vested with an inherent power to impose sanctions."  Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991).  The imposition of such sanctions is warranted "where a party uses the judicial forum

18

for improper purposes or abuses of the judicial process."
Carousel Foods of Am. v. Abrams & Co., 423 F. Supp. 2d 119,
124 (S.D.N.Y. 2006) (citing Chambers, 501 U.S. at 43).

Crescent has contended that it is not liable for
sanctions as a result of asserting the first cause of action
in the Complaint (which Crescent has since acknowledged is
without basis) because "[t]here was genuine confusion about
the status of the judgment in Ghana," and "licensed Ghanian
attorneys advised that there was still in effect a valid
judgment against [Ecobank]." Dkt. No. 26. However, prior to
initiating the instant action, Crescent had sought to enforce
the purported judgment against Ecobank via the courts of the
United Kingdom, but was unable to do so after the UK Court
held that the Accra Court's July 31, 2007 order granting
Crescent leave to enforce the April 2007 judgment against
Ecobank had been "set aside" by the Accra Court's February 27,
2008 order, and therefore no judgment against Ecobank existed
thereafter. Laoye Decl. Ex. B.

Moreover, the Accra Court's January 10, 2013 orders
expressly noted that the Accra Court's July 31, 2007 order
expanding the judgment to include Ecobank "was clearly held to

19

have been made by mistake and through error on 27th February

2008," Dkt. No. 25, Order #2, and therefore Crescent's attempt

to enforce the April 2007/August 2011 judgment against Ecobank

in this Court "could only be the product of mischief,

conducted with full knowledge that there was no such order

subsisting against Ecobank Nigeria after 27th February 2008."

Id., Order #1.

    Crescent should have understood from the Accra

Court's February 27, 2008 order that it could not enforce the

April 2007/August 2011 judgment against Ecobank.  Even if

Crescent's claim that it suffered from "genuine confusion" at

that point is taken at face value, the matter was certainly

clarified by the UK Court's ruling dated January 31, 2012,

which specifically noted that the judgment against Ecobank had

been set aside by the Accra Court's order of February 27,

2008.  Thus, at the time the Complaint was filed here,

Crescent had been given ample reason to be circumspect about

the status of the erstwhile judgment against Ecobank, and yet

Crescent asserted a cause of action premised upon the

continuing viability of such a judgment, and proceeded to

vigorously maintain that position in its submissions to the

Court and during oral argument, only acknowledging its error

when it was essentially forced to do so in the wake of the
Accra Court's January 10, 2013 orders.  Such conduct, as noted
by the Accra Court, "could only be the product of mischief,"
and merits the imposition of sanctions in the form of an award
to Ecobank of the attorneys' fees and costs expended in
defending against Crescent's first cause of action.

## Conclusion

On the conclusions set forth above, Ecobank's motion
to vacate the Attachment issued on November 27, 2012 is
denied, and its motion for an award of attorneys' fees and
costs expended in defending against the first cause of action
asserted in the Complaint is granted.

The parties are directed to submit a schedule for
the submission of proof of the amount of the costs and fees
identified above.

It is so ordered.

New York, NY
July / 𝒱 , 2013

ROBERT W. SWEET
U.S.D.J.

21